## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | **Bky. No. 10–16541 ELF** |
| Debtor. | : | |
| ——————————————— | : | |
| | : | |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BAC HOME LOANS SERVICING/BANK OF** | : | |
| **AMERICA, N.A. AND** | : | |
| **NATIONAL RESIDENTIAL ASSETS CORP.** | : | **Adv. No. 16-265** |
| | : | |
| **Defendants.** | : | |
| ——————————————— | : | |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA, N.A.,** | : | |
| **UNITED GUARANTY RESIDENTIAL** | : | |
| **INSURANCE COMPANY OF NORTH** | : | |
| **CAROLINA,** | : | |
| **AIG** | : | **Adv. No. 16-362** |
| | : | |
| **Defendants.** | : | |
| ——————————————— | : | |

# M E M O R A N D U M

# I.  INTRODUCTION

In these adversary proceedings, Plaintiff Susan Boltz-Rubinstein ("the Debtor") seeks damages from the Defendants based upon their purported fraud, TILA and RESPA violations, and violations of certain sections of the Bankruptcy Code, including the automatic stay provision, 11 U.S.C. §362(a).  She also seeks the invalidation of the mortgage liens on her home.

All of the Defendants are alleged to be either the holder or the servicer of the Debtor's home mortgages.  Bank of America, N.A. ("Bank of America:) is the successor by merger to BAC Home Loans Servicing.  (Adv. No. 16-265, Complaint ¶ 6).  United Guaranty Residential Insurance Company ("United Guaranty") is the mortgage subsidiary of AIG.

Presently before the court are the Defendants' motions to dismiss the complaints.  The primary issue involves the court's subject matter jurisdiction.

The Debtor claims that the bankruptcy court has jurisdiction and should exercise it, because this is a proceeding "related to" the bankruptcy case.  The Defendants argue that the bankruptcy court does not have jurisdiction because the issues presented in the complaint cannot affect the administration of the Debtor's now-concluded chapter 13 bankruptcy case.  The Defendants alternatively argue that if the bankruptcy court has jurisdiction to hear the cases, I should abstain from doing so, dismissing these cases so they may be brought in a more appropriate, non-bankruptcy forum.

As explained below, I conclude that:

1.  The court has jurisdiction over the Debtor's claim under 11 U.S.C. §362(k) and there is no reason to abstain from hearing it.

2.  The Debtor has failed to state a claim upon which relief can be granted with respect to the remaining Bankruptcy Code based claims.

-2-

3.   The court lacks jurisdiction over the Debtor's nonbankruptcy claims; and, to
the extent that jurisdiction may exist, it is appropriate to abstain from
exercising that jurisdiction.

## II.  PROCEDURAL HISTORY

### A.

On October 8, 2010, the Debtor commenced this bankruptcy case by filing a chapter 13

petition (Bky. No. 10-16541, Doc. #1) ("the Main Case").

Two (2) proofs of claim were filed asserting secured claims (collectively "the Mortgage

Claims") against the Debtor's primary residence ("the Property").   United Guaranty filed a

secured proof of claim for $114,027.24 on August 5, 2010, which it amended on July 15, 2011

("the United Guaranty Claim").  (Claim Nos. 1-1, 1-2).  Bank of America,[1] as servicer for

National Residential Assets Corporation ("NRAC"), filed a secured proof of claim for

$587,118.56 on March 21, 2011 ("the Bank of America Claim").  (Claim No. 17-1).  Each of the

Mortgage Claims included a claim for prepetition arrears.

The Debtor's Third Amended Plan ("the Plan") was confirmed on January 10, 2012.

(Main Case, Doc. #167).  The Plan provided primarily for the payment of priority tax claims.  It

did not provide for either of the Mortgage Claims.  In fact, the Plan did not even mention the

United Guaranty Claim.  As for the Bank of America Claim, the Plan stated that "pre-petition

mortgage arrears owed to Bank of America  . . .   **will not be paid through the plan**."  Id. at

¶7(f) (emphasis added).  Instead, the Plan stated that "aforesaid arrears  . . .  will be cured

---

[1]      The proof of claim was filed by BAC Home Loans Servicing, LP.

through the mortgage loan modification." Id. at ¶7(g).[2]

In May of 2015, the Debtor commenced two (2) adversary proceedings (Adv. Nos. 15-176 and 15-183) (the "Prior Adversaries"). The complaints in the Prior Adversaries made the same factual allegations against roughly the same parties as the instant proceedings.[3] (See Adv. No. 15-176, Doc. #1; Adv. No. 15-183, Doc. #1).[4] Following a joint hearing on June 25, 2015, this court dismissed both Prior Adversaries, determining that it lacked subject matter jurisdiction to hear the cases and would permissively abstain from deciding the cases even if it had jurisdiction.   (Adv. No. 15-176, Doc. #27; Adv. No. 15-183, Doc. #17).

While those Prior Adversaries were pending, NRAC filed a motion for relief from the automatic stay on May 4, 2016, alleging that its interest in the Property was not adequately protected.  (Bky. No. 10-1654, Doc. #283).  The Debtor contested the motion.  Following a June 23, 2016 hearing, the motion was granted.  (Id., Doc. #293).

The Debtor full performed her payment obligation under the Plan.  The Trustee filed his Final Report on June 16, 2016.  (Main Case, Doc. # 289).   The Debtor received a chapter 13 discharge on September 15, 2016.  (Id., Doc. #306).

---

[2]       To be clear, the Debtor did not provide for the Mortgage Claims in her plan whatsoever. She did not propose to cure her arrears through the plan, see 11 U.S.C. §1322(b)(5); nor did she seek to pay off the claims in full, see 11 U.S.C. §1325(a)(5).  In other words, the Debtor made no payments under the Plan to be distributed on account of the Mortgage Claims.

[3]       The Prior Adversaries were filed against BAC and United Guaranty only.  They alleged the same assignment fraud and raised similar causes of action, including an FDCPA claim. The TILA, RESPA and automatic stay violation claims are new allegations in the present adversary proceedings.

[4]       The Defendant in Adv. No. 15-176 was BAC Home Loans Servicing, L.P.  The Defendant in Adv. No. 15-183 was United Guaranty.

**B.**

On August 17, 2016, about one (1) month before the entry of the discharge order, the Debtor initiated the first of the two (2) adversary proceedings presently before the court by filing a complaint against Bank of America.  She later amended the complaint, adding National Residential Assets Corp. as a defendant.  (See Adv. No. 16-265, Doc. #'s 1, 4).

The Debtor filed the second adversary proceeding against Bank of America and United Guaranty on October 2, 2016, about one (1) month after receiving her discharge.  She later amended that complaint as well. (See Adv. No. 16-362, Doc. #'s 1,4).

The Defendants filed motions to dismiss both matters.  (Adv. No. 16-265, Doc. #10; Adv. No. 16-362 Doc. #'s 6, 7, 16, 17, 18, 19, 21, 29, 41, 42) (collectively, "the Motions").  The Debtor responded to the Motions.  (Adv. No. 16-265, Doc. #13; Adv. No. 16-362, Doc. #'s 31, 32, 34, 35, 36, 38, 39).  The Motions raise issues of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), as well as the legal sufficiency of the claims asserted, see Fed. R. Civ. P.12(b)(6).  I held a hearing on the Motions on March 2, 2017, mainly dedicated to the legal issue of subject matter jurisdiction.

**III.  LEGAL STANDARDS**

A motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of subject matter jurisdiction over a claim.  When a motion to dismiss challenges subject matter jurisdiction, the court must distinguish between a Rule 12(b)(1) motion that attacks the complaint on its face and one that attacks the existence of subject matter jurisdiction in fact, quite apart from the allegations in the pleadings.  In ruling on a Rule 12(b)(1) motion that attacks the complaint on its

face, as the Motions do here, the court must consider the allegations of the complaint as true.

See, e.g., In re Star Grp. Commc'ns, Inc., 568 B.R. 616, 622 (Bankr. D.N.J. 2016);  In re Merritt,

529 B.R. 845, 858-59 (Bankr. E.D. Pa. 2015), aff'd, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016);

In re Funches, 381 B.R. 471, 483 (Bankr. E.D. Pa. 2008).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the

factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and

determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007).  A defendant is entitled to dismissal of a

complaint only if the plaintiff has not pled enough facts to state a claim to relief that is plausible

on its face. Twombly, 550 U.S. at 547.  A claim is facially plausible where the facts set forth in

the complaint allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific

evaluation of the complaint, drawing from its judicial experience and common sense.  See, e.g.,

Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc.,

460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities).  In doing so, the court is required

to accept as true all allegations in the complaint and all reasonable inferences that can be drawn

therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g., Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181,

188 (3d Cir. 2006).  But, the court is not bound to accept as true a legal conclusion couched as a

factual allegation. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

In assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n. 1 (Bankr. E.D. Pa. Apr. 23, 2010).

## IV.  THE COMPLAINTS

### A. The Debtor's Factual Allegations

The Debtor has pled the following facts:

- The Debtor took out two mortgages with Bank of America.

- As was common practice in the mortgage-backed security industry, those

mortgages were immediately assigned to other entities.

- The assignments were not properly recorded.

- The notes were lost and the actual ownership of the mortgages was unclear. Knowing that they did not have a legal right to enforce either mortgage, the Defendants filed the Mortgage Claims in the Debtor's Main Case.

- The Mortgage Claims were neither provided for nor paid through the Debtor's confirmed plan; instead, the Debtor attempted to work out a loan modification to deal with the mortgage arrears.

- At some point during the bankruptcy, the Debtor realized that the Defendants did not have a right to collect the debt secured by the Mortgage Claims.

- The Debtor sent United Guaranty a request for her account payment history and the identity of the entities holding and enforcing her mortgage and the associated note, but United Guaranty did not provide this information.

- By 2016, the Debtor had not obtained a loan modification from Bank of America.

- NRAC obtained relief from the automatic stay.

- Bank of America then filed an Act 91 Notice, informing the Debtor of a default on her mortgage and stating that the Debtor must either cure the default or risk foreclosure.

- Within the notice, Bank of America did not claim that it was sent on behalf of NRAC; the only party identified was BNY Mellon, as "investor or owner" of the underlying mortgage.

### B. The Debtor's Asserted Claims for Relief

The Debtor has asserted a number of causes of action against the Defendants.  To simplify the analysis, I have taken all of the claims from both adversary complaints and grouped them into three (3) categories.

Category 1 encompasses claims under provisions of the Bankruptcy Code employed in case administration (other than the automatic stay violation claim, which is in Category 3):

1. Under 11 U.S.C. §502: the claims should be disallowed because the Defendants had no right to collect the debts alleged in the Mortgage Claims.

2. Under 11 U.S.C. §506(d): the Mortgage Claims should be voided because the Defendants do not have an enforceable security interest against the Debtor's Property.

3. Under 11 U.S.C. §105(a): the Defendants should be sanctioned because they engaged in fraud by filing a proof of claim with knowledge that they had no right to enforce the underlying debt.

All of the claims in Category 1 will be dismissed because they fail to state a claim upon which relief can be granted.

Category 2  covers the non-Bankruptcy Code claims involving breach of contract, fraud and violation of consumer protection statutes:

1. The Defendants had no right to payments, and should be ordered to return all payments made to them by the Debtor.

2. The Defendants committed fraud by filing the Mortgage Claims when they knew they did not have a right to collect the amounts alleged in the Mortgage Claims.

3. United Guaranty violated the Truth in Lending Act ("TILA"), 11 U.S.C. §1641, when it did not respond to the Debtor's request for the identity of the holder of the note which formed the basis of the United Guaranty Claim.

4. United Guaranty violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605(e)(2), when it did not properly respond to the Debtor's qualified written request.

The Category 2 claims will be dismissed for lack of jurisdiction. Alternatively, if jurisdiction exists, the court will abstain from hearing these claims.

Category 3 is limited to the automatic stay violation claim against Bank of America.  This claim is based on Bank of America's action in sending the Debtor an "Act 91" notice and seeks

damages under 11 U.S.C. §362(k).[5]  This sole has been adequately pled and will not be

dismissed.


# V.  ANALYSIS

## A. Category 1: The Bankruptcy Code Case Administration Claims

### 1.

The Debtor asserts claims against the Defendants under §§502, 506 and 105 of the

Bankruptcy Code.  Implicit in these claims is the premise that every provision of the Code can

give rise to a private right of action, entitling a party to relief.  This premise is incorrect.

Sections 502 and 506 both play a significant role in bankruptcy case administration, but

neither Code provision creates a freestanding private right of action.  See In re Padilla, 389 B.R.

409, 423 (Bankr. E.D. Pa. 2008).[6]  This principle is fortified in this case by the fact that the

---

[5]        An Act 91 notice is a pre-foreclosure notice required by statute to be sent to certain
residential homeowners prior to the initiation of mortgage foreclosure proceedings.  See 35 P.S. §§
1680.402c(a), 1680.403c(a).


[6]        In Padilla, I pointed out that:

> [C]ourts have held that a creditor's violation of particular Bankruptcy Code
> provisions does not give rise to a private right of action. Many courts have
> declined to find a private right of action under §§ 363, 502, 506, 521, 524 and
> 1322 of the Bankruptcy Code. . . .  See Alan M. Ahart, The Limited Scope of
> Implied Powers of A Bankruptcy Judge: A Statutory Court of Bankruptcy, Not A
> Court of Equity, 79 Am. Bankr. L.J. 1, 9–11 & nn. 60–71 (2005) (collecting
> cases) ("Ahart"); see generally Wisniewski v. Rodale, Inc., 510 F.3d 294,
> 298–301 (3d Cir. 2007) (discussing Supreme Court jurisprudence on implied
> private rights of action under federal statutes).

> In this Circuit, the Court of Appeals has spoken definitively on the
> subject of a private right of action under 11 U.S.C. § 506 . . . .  See In re
> Joubert, 411 F.3d 452, 456 (3d Cir. 2005); see also In re Figard, 382 B.R. 695
> (continued...)

Debtor seeks a remedy for purported violations of section 502 and 506 <u>after</u> her case has been

completely administered and her discharge has been entered.  With the Plan confirmed and

performance under the Plan completed, §§502 and 506 have no further role to play in

administering this case.

## 2.

The Debtor apparently anticipated this issue and invokes §105(a) as an alternative way to

remedy the alleged violations of §§502 and 506.

It is black letter law that §105(a) may be invoked only as authority for the entry of an

order enforcing another Code provision.  This provision may not be employed to create a new

substantive right; nor will it provide a remedy that conflicts with another Code provision.  <u>See,

e.g.</u>, <u>Moushigian v. Marderosian</u>, 764 F.3d 123, 127-28 (1st Cir. 2014); <u>see also</u> <u>Law v.

Siegel</u>,134 S. Ct. 1188, 1194 (2014).

While perhaps there are circumstances in which it may be appropriate for the court to

exercise its §105(a) power to enforce a §502 or §506 determination,[7] this is not such an instance.

---

[6](...continued)

       (Bankr. W.D. Pa. 2008); <u>Patrick v. Dell Fin. Servs., L.P.</u> (In re Patrick)<i>,</i> 344 B.R.
       56 (Bankr. M.D. Pa. 2005).

389 B.R. at 423.

[7]     I emphasize the word "perhaps."  The existence of 11 U.S.C. §1327(a), which provides
that a confirmed plan is binding on all creditors, regardless whether the plan provides for a creditor's
claim,  makes it difficult to identify the circumstances in which there would be an independent need to
enforce determinations under §502 or §506.  <u>See generally</u> <u>In re Thomas</u>, 497 B.R. 188, 203-04 (Bankr.
E.D. Pa. 2013) ("relief from the bankruptcy court to enforce 11 U.S.C. § 1327 is available through
exercise of the court's authority under 11 U.S.C. § 105(a)").

Essentially, the Debtor's theory is that an entity with some relationship to the subject note and mortgage, but which lacked the power to enforce payment of the note, has improperly filed a proof of claim.  Certainly, if proven, the Debtor's allegations might support an objection to and disallowance of the proof of claim.  But that is as far as 11 U.S.C. §502(b) goes.[8]  There are no further rights provided by §502 that require vindication and therefore, no need to employ §105(a) – especially in this case, where the Debtor did not provide for the proof of claim in the Plan and the allowance of the claim had no effect on case administration.

At bottom, because the Plan did not provide for this claim and the filing of the proof of claim had no effect on case administration and caused the Debtor no discernible harm, the use of the court's §105(a) power is inappropriate. Consequently, the Debtor's attempt to leverage §105 to create a claim under §502 cannot survive the Motions.[9]

**3.**

The Debtor has invoked §105(a) in another way.  She asserts that relief under §105(a) is necessary to remedy the Defendants' alleged filing of fraudulent proofs of claims. She argues that the mortgage companies voluntarily "brought their fraud into the court" and that the court should sanction them through its §105 power. (Audio Transcript of Hearing, 3/2/17 at 2:45 P.M).  This theory does not fare any better.

Section 105(a) expressly authorizes the court to issue an appropriate order "to prevent an

---

[8]      11 U.S.C. §502(b) provides nine (9) grounds for the disallowance of a proof of claim.

[9]      As for 11 U.S.C. §506, the Debtor has not articulated any cogent theory for relief.

abuse of process." 11 U.S.C. §105(a).  Undoubtedly, there are circumstances in which §105 may

be invoked to vindicate the integrity of the bankruptcy process and to respond to a fraud

perpetuated or attempted to be perpetuated upon the court.  See generally In re Wilson, 409 B.R.

72, 76 n.6. (Bankr. W.D. Pa. 2009) (citing cases).  However, the facts alleged by the Debtor do

not rise to the level of abuse that would warrant intervention to protect the judicial process.

Rather, the Debtor has pled nothing more than grounds that could have resulted in the

disallowance of a proof of claim  – a claim that she did not provide for in her chapter 13 plan.

At the hearing on the Motions, the Debtor argued that if the true owner of her mortgage

had filed a proof of claim in the case, she would have opted to cure her arrears through the plan,

instead of seeking a loan modification outside of the bankruptcy process.  At the factual level,

this argument is implausible and perhaps disingenuous.

At the time the Debtor opted not to provide for Bank of America's claim in her chapter

13 plan and, instead, chose to pursue a loan modification, she believed that Bank of America was

the proper party. The Debtor discovered the alleged fraud later.  Thus, regardless of the identity

of the true mortgagee, the Debtor made a conscious choice to treat the debt in a particular way,

i.e., not to provide for the claim in her plan.  The Debtor has alleged no facts or circumstances

making it reasonable to believe that the knowledge that her mortgage was held by a different

entity would have caused the Debtor to act differently.

Furthermore, even if the Debtor had some interest in curing the default and was

discouraged from doing so due to the identities of the parties filing proofs of claim (as

implausible as that is), she has alleged no facts to suggest that she had the financial wherewithal

to propose and implement a cure plan for her mortgage arrears.[10]  Thus, the Amended

Complaint's conclusory allegations on the subject are insufficient.

Finally, the Debtor's legal theory essentially is that she has a cause of action for a "federal

bankruptcy tort" – i.e., that  a federal cause of action exists to remedy a creditor's misconduct in

the bankruptcy process if the misconduct causes the debtor propose and implement a chapter 13

plan that is less favorable to the debtor than an alternative plan.  Nothing in the Bankruptcy Code

suggests that such a federal cause of action exists and §105(a) cannot be stretched to create one.


### 4.

In short, none of the factual allegations and legal theories in Category 1 give rise to any

plausible entitlement for relief.


### B. Category 2: The Non-Bankruptcy Code Claims

### 1.

Bankruptcy Courts are courts of limited jurisdiction.  Bankruptcy subject matter

jurisdiction is conferred by 28 U.S.C. §1334(a) and (b) potentially extends to four (4) types of

---

[10]    Without some further factual explanation in the Amended Complaint, it is implausible
that a cure plan would have been feasible, considering that:

    (a)  a chapter 13 debtor has a general duty to provide for general unsecured creditors to a
        degree commensurate with the debtor's ability to pay, see generally 11 U.S.C.
        §1325(b);

    (b)  pursuant to the Plan, the Trustee distributed less than $7,100.00 to general unsecured
        creditors, see Trustee's Final Report Bky No. 10-16541, Doc. # 289); and

    (c)  in its proof of claim, Bank of America asserted the existence of a prepetition
        arrearage of $26,904.94.

title 11 matters:

> (1) cases under title 11;

> (2) proceedings arising under title 11;

> (3) proceedings arising in a case under title 11; and

> (4) proceedings related to a case under title 11.

The Debtor's Category 2 claims all are non-Code based claims.  They are not a bankruptcy "case" and they do not arise under title 11[11] or in the case.[12]  This leaves "related to" jurisdiction as the only possible source of jurisdiction.

To determine whether the bankruptcy court has "related to" jurisdiction over a claim, the Third Circuit employs iconic standard enunciated in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (3d Cir. 1984).  This test requires the court to determine

> whether <u>the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy</u> ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

<u>Pacor</u>, 743 F.2d at 994 (emphasis in original) (citations omitted).[13]

---

[11]    By definition, the non-Code based claims do not arise under the Bankruptcy Code.

[12]    A claim does not arise in a bankruptcy case just because it arises while the bankruptcy case is pending.  "Arising in" jurisdiction involves administrative matters that can only arise in a bankruptcy case and that would have no existence absent the bankruptcy case.  <u>Matter of Wood</u>, 825 F.2d 90, 97 (5th Cir. 1987).  Again, by definition, non-Code based causes of action do not arise in bankruptcy cases.

[13]    Recently, in <u>In re Thorpe</u>, 563 B.R. 576, 593 n.26 (Bankr. E.D. Pa. 2017), <u>aff'd sub nom</u>. <u>U.S. Trustee v. Thorpe</u>, 2017 WL 3084388 (E.D. Pa. July 20, 2017), I held that in the post-confirmation context in a chapter 13 case, it is appropriate to apply the <u>Pacor</u> test for "related to" subject matter jurisdiction rather than "close nexus" test for evaluating post-confirmation jurisdiction in a chapter 11

(continued...)

Under Pacor, most questions involving the scope of the court's "related to" jurisdiction are determined by focusing on the effect, if any, that resolution of the dispute may have on the bankruptcy estate. Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid. In re Shuman, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001); see also Celotex Corp. v. Edwards, 514 U.S. 300, 308 n. 6 (1995) (bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor).

**2.**

The Debtor has not advanced any theory why the various non-Code based claims can have an impact on the administration of her chapter 13 case.  Indeed, it is self-evident that the non-Code based claims, all of which arose post-petition, can no longer affect a bankruptcy case that has been fully administered and is ready to be closed.

At the hearing on March 2, 2017, the Debtor argued that her plan was affected because the Defendants' fraud denied her the right to make informed decisions.  The Debtor thus contends that she would have done things differently if she had known about the misrepresentations.

Certainly, hindsight is 20/20, but that is beside the point. Whatever might have happened differently had the Debtor been aware of different "facts," her chapter 13 plan has been confirmed and completed; it is no longer possible to alter the administration of this case.

The remedy the Debtor seeks for her contract and fraud claims further illustrates this

---

[13](...continued)
case enunciated by the Third Circuit in In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004).

court's lack of jurisdiction.  She seeks the return of money she paid – all of which was paid to a

creditor that was not provided for in her confirmed plan, and some of which was paid prepetition.

If the Debtor recovered that money, there would be <u>no</u> impact on the completed plan.  The same

holds true with respect to the Debtor's TILA and RESPA claims.

### 3.

A finding of no subject matter jurisdiction is ordinarily sufficient to resolve a case.

However, even if there is subject matter jurisdiction over any of these Category 2 claims, it is

appropriate to abstain under 28 U.S.C. §1334(c)(1).  <u>See generally</u> <u>Sinochem Intern. Co. Ltd. v.</u>

<u>Malaysia Intern. Shipping Corp.</u>, 549 U.S. 422, 429-31 (2007) (a federal court may choose

among threshold grounds for declining to decide a case on the merits and, if it does so, need not

necessarily determine whether it has subject matter jurisdiction).

There are a number of factors used to determine whether a bankruptcy court should

permissively abstain from deciding a matter

> (1) the effect on the efficient administration of the estate; (2) the extent to which
> state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled
> nature of applicable state law; (4) the presence of a related proceeding
> commenced in state court or other non-bankruptcy court; (5) the jurisdictional
> basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case; (7) the substance rather
> than the form of an asserted "core" proceeding; (8) the feasibility of severing state
> law claims from core bankruptcy matters to allow judgments to be entered in state
> court with enforcement left to the bankruptcy court; (9) the burden on the court's
> docket; (10) the likelihood that the commencement of the proceeding in
> bankruptcy court involves forum shopping by one of the parties; (11) the existence
> of a right to a jury trial; and (12) the presence of non-debtor parties.

<u>E.g.</u>, <u>Allen v. J.K. Harris & Co., LLC</u>,  331 B.R. 634, 645 (E.D. Pa. 2005)

In this proceeding, the most relevant factors are: the questionable jurisdictional basis for

determining the claims in the bankruptcy court, the effect on the administration of the bankruptcy

plan or estate, the degree of remoteness from the main bankruptcy case, the feasibility of severing

bankruptcy claims from non-bankruptcy claims, and the possibility of forum shopping.  See In re

Fruit of the Loom, 407 B.R. 593, 599 (Bankr. D. Del. 2009); In re Loewen Grp. Int'l, Inc., 344

B.R. 727, 729-30 (Bankr. D. Del. 2006).

As discussed above in relation to subject matter jurisdiction, the adjudication of these

non-Code claims cannot impact the plan or bankruptcy estate.  See part V.B.2, *supra*. The claims

are easily severed from the bankruptcy process; they appear to be included in these adversaries

mainly because the events giving rise to the claims occurred during the bankruptcy.  The

Debtor's filing of these adversary proceedings in this court, when the near-identical Prior

Adversaries already were dismissed and her plan completed, also gives rise to an inference that

the Debtor chose the bankruptcy forum for its collateral effects, rather than as an appropriate

arena in which to litigate the merits of her claims.  At the hearing, the Debtor stated that she

could not bring these second-category actions in a state court because she would lose, hinting that

state courts did not take quiet title actions or mortgage assignment fraud seriously.  (Audio

Transcript of Hearing, 3/2/17 at 2:30 P.M.).  This strongly implies that the Debtor is forum

shopping.

For all of these reasons, I would abstain from hearing the causes of action in Category 2

even if the bankruptcy court had subject matter jurisdiction.

## C. Category 3: The Stay Violation Claim

As discussed earlier, the Bankruptcy Code does not generally create private rights of action that are separable from the administration of a case.  One of the few exceptions is 11 U.S.C. §362(k), which creates a cause of action for damages and attorney fees for willful violations of the automatic stay.  See, e.g., In re Repine, 536 F.3d 512, 519 (5th Cir. 2008).

The cause of action under 11 U.S.C. §362(k) exists to vindicate the power of the automatic stay, a key part of the bankruptcy process.  In re Schwartz-Tallard, 803 F.3d 1095, 1100 (9th Cir. 2015).  Upholding the power of the stay is so vital to the exercise of a bankruptcy court's in rem powers that a court may hear a stay violation claim even after confirmation of a plan.

The Third Circuit's explanation of a willful stay violation is:

> when a creditor violates the stay with the knowledge that the bankruptcy petition has been filed.  Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional .... [A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness....

In re Lansaw, 853 F.3d 657, 664 n.4 (3d Cir. 2017) (quoting In re Lansdale Family Rests. Inc., 997 F.2d 826, 829 (3d Cir. 1992)).  This willful violation must have caused actual damages, but actual damages in a stay violation case are construed broadly and can include emotional distress. Lansaw, 853 F.3d at 667.

In the complaint, the Debtor alleges that, while the stay was in place, Bank of America sent an Act 91 notice stating that the Debtor's mortgage was in default and that if she did not cure the default a foreclosure would be filed against her.  The Debtor alleges that Bank of America was acting on behalf of BNY Mellon when it filed this Act 91 notice.  The Debtor

produced evidence that as recently as August 6, 2016, Bank of America claimed it was moving to foreclose on behalf of BNY Mellon, which Bank of America described as the "investor or owner" of the note.  (Adv. No. 16-265, Am. Complaint Exhibits A, E).

Bank of America indisputably had knowledge of the automatic stay; it was actively involved in the case as of the petition date.  Accordingly, if Bank of America acted on behalf of BNY Mellon (rather than NRAC, which had obtained relief from the automatic stay), it may have wilfully violated the automatic stay.  The Debtor alleges that this violation has caused her actual and emotional damages.

These allegations are sufficient to state a claim for a violation of the automatic stay, and therefore, this cause of action will not be dismissed.[14]

---

[14]     Although this claim has survived a motion to dismiss, I caution the Debtor that it may not be long lived.

The Debtor concedes that NRAC obtained relief from the stay before the Act 91 notice was sent.  It is well-settled that an entity that obtains stay relief can delegate that relief to an agent, which can properly take action without violating the stay.

The Debtor has questioned the nature of the relationships among Bank of America, NRAC and BNY Mellon with respect to her note and mortgage during this bankruptcy.  At the March 2, 2017 hearing on the Motions, Bank of America's counsel also represented NRAC and stated that: (a) NRAC owns the legal interest in the mortgage; (b) BNY Mellon is an investor in the securitized trust which obtains the beneficial interest in the mortgage; and (c) Bank of America services this mortgage on behalf of both these interests.  Additionally, Bank of America has represented that it merged with NRAC into a single entity.  Under either of these scenarios, stay relief obtained by NRAC might have been properly exercised by Bank of America.  However, at the motion to dismiss stage, there is no evidentiary record to support Bank of America's representations in response to the Motions.  Of course, that could change at summary judgment.

## VI.  CONCLUSION

For the reasons discussed, the Complaint in Adv. No. 16-362 will be dismissed in its

entirety.  Adversary 16-265 will be dismissed, with the exception of Count IV, which states a

claim based upon 11 U.S.C. §362(k).

An order consistent with this Memorandum will be entered.


Date:  **September 18, 2017**        _____

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**